**SCHOLL MFG. CO., Inc.**

v.

**UNITED STATES.**

No. 49116.

United States Court of Claims.

Dec. 1, 1953.

Edwin J. McDermott, Philadelphia, Pa., for the plaintiff.

John R. Franklin, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

By a purchase order contract dated June 7, 1945, the plaintiff agreed to furnish to the War Department 40,000 plastic containers at $1.70 each. The plaintiff manufactured and furnished 16,000 such containers, and was paid $1.70 each for them. On April 16, 1946, the War Department terminated the

plaintiff's right to furnish the remaining 24,000 containers. The plaintiff does not complain of the termination. Its claim is founded upon the fact that its costs of manufacturing the 16,000 containers which it did furnish were much more than the amount which it received for them. It claims that, under its contract, properly interpreted, it had a right to be paid those higher costs, plus a reasonable profit.

The contract here involved was initiated by the issuance on May 22, 1945, by the Philadelphia Quartermaster Depot of the War Department of its Informal Request for Quotations, Serial No. X–213 (45) calling for price quotations on the manufacture of the plastic containers desired. Such a request was sent to the plaintiff, among others. The request had attached to it several pages of provisions which were to be a part of the contract, if a bidder got a contract. Among these papers, including an amendment which was sent out a day or two later to replace an obviously garbled paragraph in the original papers, the following language appeared:

"Redetermination of Price by
Formula

"(a) Agreement to Redetermine Price. The Government and the contractor recognize that the costs of performing this contract cannot be accurately estimated at the time of its execution and that the contract price may therefore be too high. They therefore agree that the contract price fixed in the bid shall be redetermined in accordance with this Article on the basis of the actual experience of the contractor in performing part of the contract. They agree that the cost of producing 40% of the items called for hereunder (hereinafter called the 'test run') shall therefore be used as the general basis for the redetermination of price.

"(b) Estimate of Costs. The contractor represents that the contract price fixed in this bid is based on a total estimated cost of $......, itemized as follows.*

\* \* \* \* \* \*

"(d) Method of Redetermination. (1) Upon the filing of the date [sic] required by section (c) hereof, the Contracting Officer and the contractor shall determine the costs of producing the 'test run' and the cost of producing the remainder of the items called for by the contract as indicated by the cost of production of the 'test run' and the cost estimate submitted by the contractor under Section (c). Any disagreement as to the experienced costs or estimated costs shall be subject to Disputes Article.

"(e) Payments. Pending the redetermination of the contract price hereunder the Government shall pay for all items delivered hereunder at the price fixed in this Bid. Upon the redetermination of the price hereunder the contractor shall apply as a credit against payment for subsequent deliveries or shall repay to the Government, as the Contracting Officer may direct, an amount equal to the difference between the price paid on all items theretofore delivered and the redetermined price for such items; and the Government shall pay for all items thereafter delivered the redetermined price minus any such credit. If, before the price is redetermined hereunder, any amount paid under this contract has been included in any renegotiation agreement made under Section 403 of the Sixth Supplemental National Defense Appropriation Act, 1942, as amended, no refund or credit shall be required hereunder with respect to that amount."

---

\* This breakdown may be altered to suit particular circumstances. Any reserves for contingencies should be stated separately and clearly identified.

On May 28, 1945, the plaintiff submitted its bid on the form which had been sent it, quoting a unit price of $1.83 per container. The Government's contracting officer telephoned the plaintiff's Mr. Skinner and, in effect, asked him to reduce the plaintiff's bid. Mr. Skinner telephoned a bid of $1.70 per unit. The contracting officer asked him to put this bid in a telegram, and, on Mr. Skinner's request, told him how to word the telegram. Mr. Skinner then sent the following telegram:

"Requisition P–G–196–45 Revise Quotation $1.70 Per Unit FOB Chicago Deliveries As Quoted Redetermination Downward After 40 Percent Completion."

As we have seen, a contract was then awarded the plaintiff and, it alleges, its costs of performance were higher than the amount it received. It claims that it had the right to have the contract price redetermined upon the basis of its actual costs. It sought and was denied such a redetermination, and sues for the amount which such a redetermination would have given it.

The Government points to the statement in article (a) quoted above, that the parties recognize that the contract price may be too high, and they therefore agree that it may be redetermined. It points to the statement in article (d) that upon a redetermination the contractor shall credit the Government with the difference between the contract price and the redetermined price as to units already paid for. It points to the telegram quoted above speaking of redetermination downward.

Each of these statements in the contract writings negatives any idea of an increase in the contract price as a result of redetermination. If the writings had spoken merely of redetermination after partial performance, it might have been assumed that the redetermination would work both ways. But with these pointed references to a one-sided redetermination, no one could have indulged such an assumption.

The plaintiff says that in the telephone conversation between its Mr. Skinner and the Government's contracting officer, referred to above, in which the wording of the telegram there quoted was discussed, the Government's contracting officer said that "redetermination had to be downward as well as upward." We think Mr. Skinner, who so testified many years after the conversation, must have been mistaken. With the papers already in his hands implying redetermination downward only, and not even hinting at redetermination upward, it would have been remarkable that, having received an oral suggestion that there might be redetermination upward, he would immediately and without protest sign a telegram which negatived that favorable suggestion.

The inference which we have drawn from the circumstances is confirmed by the fact that in the administration of the stereotyped contract provisions which were inserted in this contract, it was understood by the Army people who used them that the "Redetermination of Price by Formula" provisions which were used here, were not intended and were never used to provide for redetermination both upward and downward. Another set of provisions had been prepared and was available for cases where such redetermination was to be permitted.

The plaintiff points to the fact that the contract papers in this case omitted one paragraph of the regular stereotyped provisions. That was the second paragraph of article (d), the first paragraph of which is quoted above. The omitted paragraph was as follows:

"(2) If the cost of producing the 'preliminary run' and the 'test run' plus the cost of production of the remainder of the items called for by the contract as determined under subsection (1) above, is less than the total estimated cost stated in section (b), the total price to be paid pursuant to Article * * * shall be reduced by the amount of the difference. The redetermined price

shall be evidenced by a supplemental agreement."

The Government does not explain the omission. It may have been mere inadvertence, as was the garbled version of article (a) which was first sent out. If it had been included, it would merely have been a third and more direct statement that redetermination worked only one way. Its omission might have been embarrassing to the Government if it had had occasion to try to redetermine the plaintiff's contract price downward. But we think its omission does not help the plaintiff, since without it, as with it, all references were to downward redetermination only.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and WHITAKER and LITTLETON, Judges, concur.